**THE DUGGER LAW FIRM, PLLC**
**Cyrus E. Dugger**
**28-07 Jackson Ave., 5th Fl.**
**Long Island City, NY 11101**
**Tel: (646) 560-3208**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAFAEL SANCHEZ, | |
| Plaintiff, | **Case No.** |
| v. | **COMPLAINT** |
| L'OREAL USA, INC., | **Demand for Trial by Jury** |
| Defendant. | |

    1.    Plaintiff Rafael Sanchez ("Plaintiff"), by and through his attorneys, The Dugger Law Firm, PLLC, makes the following allegations against L'Oreal USA, Inc. ("L'Oreal" or "Defendant").

### PRELIMINARY STATEMENT

    2.    Defendant subjected Plaintiff to: (1) sexual orientation-based harassment and a sexual orientation-based hostile work environment; (2) atheism-based harassment and an atheism-based hostile work environment; (3) HIV disability-based harassment and an HIV disability-based hostile work environment; (4) sexual orientation plus HIV-disability harassment and sexual orientation plus HIV-disability-based hostile work environment; and/or (5) aiding and abetting and attempted aiding and abetting of discrimination, all in violation of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq*. ("NYCHRL").

1

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction over Plaintiff's claims under N.Y.C. Admin. Code §§ 8-101 *et seq*. pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiff is a citizen of a different state than Defendant and the amount in controversy exceed $75,000 exclusive of interest and costs.

4. Defendant is subject to personal jurisdiction in New York.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1)-(2), because all defendants are residents of New York, and because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district and Defendant operates its businesses within this judicial district.

## THE PARTIES

**Plaintiff Rafael Sanchez**

6. Plaintiff is an adult individual who is a resident of Union City, New Jersey.

7. Plaintiff is a citizen of New Jersey.

8. Plaintiff was an employee of Defendant within the meaning of the NYCHRL, from approximately December 2017 to approximately December 2018.

9. Plaintiff is and was a person within the meaning of the NYCHRL at all times relevant to the Complaint.

**Defendant L'Oreal USA, Inc.**

10. Defendant L'Oreal USA, Inc. is a Delaware corporation with a principal place of business in New York, New York.

11. At all times relevant to the Complaint, L'Oreal transacted business within New York, New York.

12. At all times relevant to the Complaint, Defendant was an employer and/or joint employer of Plaintiff within the meaning of the NYCHRL.

13. At all times relevant to the Complaint, Defendant was a person within the meaning of the NYCHRL.

## FACTUAL ALLEGATIONS

14. Defendant hired Plaintiff as a makeup artist and skincare consultant during approximately December 2017, through staffing company Randstad Professionals US, LLC ("Randstad").

15. Randstad's primary interaction with Plaintiff after he began his work for L'Oreal was the administration of payroll payments to him.

16. L'Oreal controlled the manner and means of Plaintiff's sales work.

17. L'Oreal had discretion over when and how Plaintiff worked.

18. L'Oreal had the power to set and set Plaintiff's hours of work for the company.

19. Plaintiff's work was part of the regular business of L'Oreal of selling beauty products to its customers and potential customers.

20. L'Oreal set the hours and location of work for Plaintiff's weekly assignments.

21. L'Oreal initially assigned Plaintiff to work at the Bloomingdale's store in New York City on Lexington Ave. at 59th street.

22. Plaintiff serviced clients while demonstrating the benefits of L'Oreal's YSL beauty products to customers in affiliated stores.

23. Plaintiff was paid on an hourly basis for his work for L'Oreal.

24. Upon information and belief, L'Oreal paid Plaintiff's wages through Randstad's payroll system.

25. During approximately the week of April 16, 2018, L'Oreal temporarily assigned Plaintiff to assist with a pop-up store at the flagship Lord & Taylor store in Manhattan located at 424 Fifth Avenue.

26. During this week-long assignment at Lord & Taylor, Plaintiff's supervisor was Viviana Nunez ("Nunez") -- the Business Manager for L'Oreal for this store.

27. Nunez was an employee, joint employee, and/or agent of L'Oreal.

28. In the alternative, Nunez was an independent contractor of L'Oreal.

29. Nunez reported directly to L'Oreal's Executive Account Manager Samantha Bergman ("Bergman").

30. When Plaintiff began working at the pop-up store, several of the employees warned him that Nunez was "very religious" and was "going to try to convert" him to Christianity.

31. As forecasted, Nunez's Christian proselytizing began early on during Plaintiff's pop-up store assignment. Shortly after Plaintiff began working at this store, Nunez began a campaign of anti-gay harassment and Christian proselytizing directed at Plaintiff.

32. During the first few days of the pop-up store opening, Nunez asked Plaintiff: "Do you believe in God?"

33. When Plaintiff responded that he was an atheist, Nunez began proselytizing Christianity to him.

34. Nunez repeatedly cited passages from the bible to Plaintiff, demanded that he start going to church with her, and instructed him that he needed to "repent for his sins" so that he could one day be "accepted into the kingdom of heaven."

35.     When Nunez asked Plaintiff if he read the Bible he responded: "No I have never read the Bible. I don't believe in it."

36.     Plaintiff returned to work for L'Oreal at a Bloomingdale's store full-time after this one-week assignment under Nunez at the pop-up store location.

37.     During May 2018, L'Oreal directed Plaintiff to work at the same previous flagship Lord & Taylor store under Nunez for several workdays each week.

38.     During each of these days, Nunez continued to proselytize to Plaintiff about Christianity, including additional comments about "the kingdom of heaven," the bible, and God.

39.     On one of these days, during approximately early to mid-May, Nunez disclosed to Plaintiff that her kidney was failing, that she did several hours of dialysis each night, and that she was counting on God to provide her with a kidney transplant.

40.     In a moment of empathy, Plaintiff in turn disclosed that he was HIV-positive and suffered from severe anxiety and depression.

41.     Nunez responded that having HIV meant that Plaintiff had been "a little whore" and "promiscuous" as a gay man.

42.     She then asked Plaintiff if he could "handle" his job while being HIV-positive.

43.     During June 2018, L'Oreal again assigned Plaintiff to work at the Lord & Taylor flagship store at 424 Fifth Avenue one to two days a week under Nunez's supervision.

44.     During June 2018, Nunez told Plaintiff that she needed to speak with him about an "important matter" and asked him to join her for coffee at a Panera Bread.

45.     After they sat down at Panera Bread, Nunez began proselytizing to Plaintiff by: (1) citing passages from the Bible; (2) repeatedly demanding that he start going to church with her; and (3) instructing him that he "repent for his sins."

46. When Plaintiff reminded Nunez that he was an atheist who did not believe in God she was undeterred.

47. Instead, Nunez continued her Christian proselytization to Plaintiff and reprimanded him for not listening closely enough to her about "repenting for his sins."

48. Nunez's statements to Plaintiff included that: (1) she had invited him to coffee to get him to join her church and/or faith; (2) she was "worried for his soul"; and (3) he would not get into the kingdom of heaven unless he "did what she said."

49. Nunez also repeatedly pressed Plaintiff for a specific date on which he would go to her church with her.

50. In response, Plaintiff asked Nunez the position of her church on homosexuals, including whether her church was "inclusive."

51. Nunez answered: "I must be honest with you. Your homosexuality *is a virus*. You know *your homosexuality is a virus*" and that they would "have to work around it" by maybe *"having [him] marry a woman*."

52. This reference to Plaintiff's homosexuality as a "virus," was particularly emotionally damaging given Plaintiff's long history being subjected to this same anti-gay rhetoric during the eighties AIDs epidemic.

53. It was similarly particularly damaging because of the related conflation of homosexuality and HIV.

54. The cruelty of these statements was compounded by Nunez's knowledge that Plaintiff was HIV-positive.

55. These statements were also particularly emotionally damaging to Plaintiff because, during Plaintiff's youth and young adulthood, he experienced intense, and on occasions

6

violent and life-threatening, anti-gay harassment and discrimination as a gay male in Venezuela -- including being a repeated target for police and vigilante anti-gay violence against homosexuals.

56.     For example, during approximately 1988, Plaintiff was chased by an anti-gay mob shooting at him in a high-speed car chase down a major commercial avenue in Caracas -- as police looked on without intervening.

57.     In response to Nunez's discriminatory harassment, Plaintiff opposed Nunez's proselytizing and anti-gay statements.  Plaintiff told Nunez that he had a problem with the Catholic church and Christianity generally because of their stances on homosexuality.

58.     When Plaintiff returned to the Lord & Taylor flagship store after this meeting with Nunez at Panera Bread, he told his co-worker, who was also Nunez's subordinate, what Nunez had said to him.

59.     Specifically, Plaintiff told his co-worker that Nunez had said his "homosexuality was a virus," like he had "a disease that need[ed] to be cured or eradicated."

60.     Jennings responded: "oh that's [Nunez] she [proselytizes] everyone."

61.     One or two weeks later, Nunez approached Plaintiff and said, in sum and substance, in Spanish:

>   Nunez:      "Are you active?"
>
>   Plaintiff:  "What do you mean active?"
>
>   Nunez:      "Do you have a boyfriend?
>
>   Plaintiff:  "Not at the moment I don't.  Why?"
>
>   Nunez:      "Ah, so you are not active!"
>
>   Plaintiff:  . . .

7

|  |  |  |
|---|---|---|
| Nunez: | | "Why don't *you abandon your faggot ways* and join me in the kingdom of heaven? |
| Plaintiff: | | "I can't do that. I could never do that." |

(emphasis added).

62. Over the course of the following weeks, Nunez continued to proselytize to Plaintiff several times each week, inclusive of quoting passages from the bible to him and referring to "Jesus Christ" and needing to go "to the kingdom of heaven."

63. Nunez subsequently took a medical leave from work on or about July 4, 2018.

64. Nunez returned to work from her leave during approximately the first week of September 2018.

65. Within a month, and continuing to December 2018, Nunez again initiated a campaign of anti-gay harassment of Plaintiff and Christianity proselytizing to Plaintiff.

66. Nunez repeatedly: (1) asked Plaintiff "if you are attracted to/like men, are you a woman inside"; (2) told him that "homosexuality was a virus"; and (3) asserted he could "only be cured if [he] stopped being gay and accepted God," among many other anti-gay and harassing statements.

67. All told, Nunez made more than twenty anti-gay statements to Plaintiff, inclusive of repeatedly referring to him as a "fag," "faggot," or its Spanish equivalent "marico" or "maricon," calling his homosexuality a "virus," telling him to "abandon his faggot ways and join her in the kingdom of heaven," and telling him to "abandon his faggot ways" and/or "not be such a faggot."

68. Nunez also repeatedly posed the following harassing question to Plaintiff: "[I]f you are attracted/like men, are you a woman inside?"

8

69. Beginning in October 2018, Plaintiff made three or four calls to L'Oreal about Nunez's harassment.

70. Plaintiff repeatedly detailed the harassment and asked to be connected with L'Oreal human resources.

71. At least one dispatcher confirmed that they would escalate his complaint to human resources.

72. Plaintiff never received a return phone call in response to any of these protected complaints of discrimination.

73. Moreover, upon information and belief, Defendant was already well-aware of Nunez's anti-gay harassment and Christian proselytizing at work prior to Plaintiff's complaints.

74. Upon information and belief, throughout her fifteen-year tenure with Defendant, Nunez had repeatedly proselytized to and/or attempted to convert other subordinate store employees to join her Christian faith.

75. On or about December 2, 2018, Nunez falsely accused Plaintiff of "cheating" on his time sheets.

76. Later the same day, Nunez sent Plaintiff more proselytizing text messages about Christianity.

77. One day later, Nunez texted Plaintiff that she had cancelled all of his shifts at Lord & Taylor -- effectively terminating his employment and/or constructively discharging him.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)
### (Sexual Orientation Harassment and Sexual Orientation-Based Hostile Work Environment)

78. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

79. At all times relevant to the Complaint, Defendant was an employer and/or joint employer within the meaning of the NYCHRL.

80. At all times relevant to the Complaint, Defendant had more than four employees and/or independents contractors in its employ.

81. At all times relevant to the Complaint, Plaintiff was an employee and/or person within the meaning of the NYCHRL.

82. At all times relevant to the Complaint, Plaintiff worked for Defendant within the City of New York.

83. At all times relevant to the Complaint, Plaintiff was a gay male.

84. At all times relevant to the Complaint, Defendant and/or Nunez knew that Plaintiff was a gay male.

85. Defendant discriminated against Plaintiff by treating him less well because of, or in part because of, his sexual orientation, including by subjecting him to sexual orientation harassment and/or a sexual orientation-based hostile work environment.

86. Defendant is liable for Nunez's discrimination pursuant to N.Y.C. Admin. Code § 8-107(13)(a) and/or N.Y.C. Admin. Code § 8-107(13)(c).

87. Nunez exercised managerial or supervisory responsibility for Defendant and/or exercised managerial or supervisory responsibility over Plaintiff.

88. Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

89. Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

90. Nunez was hired by and/or worked for Defendant to carry out work in furtherance of Defendant's business enterprise.

91. Nunez's discriminatory conduct was committed in the course of her work for and/or employment with Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced to such conduct.

92. Defendant's creation of a hostile work environment was a continuing violation.

93. Plaintiff has suffered emotional distress as a result of Defendant's conduct.

94. Defendant's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

95. As a result of Defendant's conduct, Plaintiff is entitled to recovery of compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, and costs pursuant to NYC Admin. Code § 8-502(a).

**SECOND CAUSE OF ACTION**
**New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)**
**(Creed Harassment and Creed-Based Hostile Work Environment)**

96. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

97. At all times relevant to the Complaint, Defendant was an employer and/or joint employer within the meaning of the NYCHRL.

98. At all times relevant to the Complaint, Defendant had more than four employees and/or independent contractors in its employ.

99. At all times relevant to the Complaint, Plaintiff was an employee and/or person within the meaning of the NYCHRL.

100. At all times relevant to the Complaint, Plaintiff worked for Defendant within the City of New York.

101. At all times relevant to the Complaint, Plaintiff was an atheist and/or non-religious.

102. At all times relevant to the Complaint, Defendant and/or Nunez knew that Plaintiff was an Atheist and/or non-religious.

103. Defendant discriminated against Plaintiff by treating him less well because of, or in part because of, his Atheism and/or non-religious creed and/or identification, including by subjecting him to creed and/or religious harassment and/or a creed-based and/or religion-based hostile work environment.

104. Defendant is liable for Nunez's discrimination pursuant to N.Y.C. Admin. Code § 8-107(13)(a) and/or N.Y.C. Admin. Code § 8-107(13)(c).

105. Nunez exercised managerial or supervisory responsibility for Defendant and/or exercised managerial or supervisory responsibility over Plaintiff.

106. Nunez was hired by and/or worked for Defendant to carry out work in furtherance of Defendant's business enterprise.

107. Nunez's discriminatory conduct was committed in the course of her employment with and/or work for Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced to such conduct.

108. Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

109. Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

110. Defendant's creation of a hostile work environment was a continuing violation.

111. Plaintiff has suffered emotional distress damages as a result of Defendant's conduct.

112. Defendant's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

113. As a result of Defendant's conduct, Plaintiff is entitled to recovery of compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, and costs pursuant to NYC Admin. Code § 8-502(a).

**THIRD CAUSE OF ACTION**
**New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)**
**(Sexual Orientation Plus HIV Disability Status Harassment, Sexual Orientation Plus HIV Disability Status-Based Hostile Work Environment)**

114. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

115. At all times relevant to the Complaint, Defendant was an employer and/or joint employer within the meaning of the NYCHRL.

116. At all times relevant to the Complaint, Defendant had more than four employees and/or independents contractors in its employ.

117. At all times relevant to the Complaint, Plaintiff was an employee and/or person within the meaning of the NYCHRL.

118. At all times relevant to the Complaint, Plaintiff was disabled within the meaning of the NYCHRL because he was HIV-positive.

119. At all times relevant to the Complaint, Defendant and/or Nunez knew that Plaintiff was HIV-positive.

120. At all times relevant to the Complaint, Plaintiff was a gay male.

121. At all times relevant to the Complaint, Defendant and/or Nunez knew that Plaintiff was a gay male.

122. At all times relevant to the Complaint, Plaintiff worked for Defendant within the City of New York.

123. Defendant discriminated against Plaintiff by subjecting him to harassment and/or a hostile work environment because of, or in part because of, a combination of his sexual orientation and his HIV-positive disability status.

124. Nunez exercised managerial or supervisory responsibility for Defendant and/or exercised managerial or supervisory responsibility over Plaintiff.

125. Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

126. Nunez was hired by and/or worked for Defendant to carry out work in furtherance of Defendant's business enterprise.

127. Nunez's discriminatory conduct was committed in the course of her work for and/or employment with Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced to such conduct.

128. Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

129. Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

130. Defendant's creation of a hostile work environment was a continuing violation.

131. Plaintiff has suffered emotional distress damages as a result of Defendant's conduct.

132. Defendant is liable for Nunez's discrimination pursuant to N.Y.C. Admin. Code § 8-107(13)(a) and/or Admin. Code § 8-107(13)(c).

133. Defendant's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

134. As a result of Defendant's conduct, Plaintiff is entitled to recovery of compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, and costs, and other compensation pursuant to NYC Admin. Code § 8-502(a).

### FOURTH CAUSE OF ACTION
### New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)
### (Disability Harassment, Disability-Based Hostile Work Environment, and Disability Stereotyping Discrimination)

135. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

136. At all times relevant to the Complaint, Defendant was an employer and/or joint employer within the meaning of the NYCHRL.

137. At all times relevant to the Complaint, Defendant had more than four employees and/or independents contractors in its employ.

138. At all times relevant to the Complaint, Defendant had more than four employees and/or independents contractors in its employ.

139. At all times relevant to the Complaint, Plaintiff was an employee and/or person within the meaning of the NYCHRL.

140. At all times relevant to the Complaint, Plaintiff worked for Defendant within the City of New York.

141. At all times relevant to the Complaint, Plaintiff was disabled within the meaning of the NYCHRL because he was HIV-positive.

142. At all times relevant to the Complaint, Defendant and/or Nunez knew that Plaintiff was HIV-positive.

143. Defendant discriminated against Plaintiff by subjecting him to disability harassment and/or a disability-based hostile work environment because of, or in part because of, his HIV-positive status.

144. Defendant's disability discrimination and discriminatory statements included stereotyping discrimination concerning HIV-positive persons, upon information and belief, based on the generalized sense by Nunez that persons, like Plaintiff, who were HIV-positive, could not "handle" working and/or could not "handle" working with a reasonable accommodation of their disability.

145. Defendant's creation of a hostile work environment was a continuing violation.

16

146. Plaintiff has suffered emotional distress and additional damages as a result of Defendant's conduct.

147. Defendant is liable for Nunez's discrimination pursuant to N.Y.C. Admin. Code § 8-107(13)(a) and/or N.Y.C. Admin. Code § 8-107(13)(c).

148. Nunez exercised managerial or supervisory responsibility for Defendant and/or exercised managerial or supervisory responsibility over Plaintiff.

149. Nunez was hired by and/or worked for Defendant to carry out work in furtherance of Defendant's business enterprise.

150. Nunez's discriminatory conduct was committed in the course of her work for and/or employment with Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced to such conduct.

151. Nunez's discriminatory conduct was committed in the course of her work for and/or employment for Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced in such conduct.

152. Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

153. Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

154. Defendant's creation of a hostile work environment was a continuing violation.

155. Defendant's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

156. As a result of Defendant's conduct, Plaintiff is entitled to recovery of compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, and costs pursuant to NYC Admin. Code § 8-502(a).

### FIFTH CAUSE OF ACTION
### New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(6)
### (Aiding and Abetting and Attempted Aiding and Abetting)

157. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

158. At all times relevant to the Complaint, Defendant was a person and/or employer within the meaning of the NYCHRL.

159. At all times relevant to the Complaint, Plaintiff was an employee and/or person within the meaning of the NYCHRL.

160. At all times relevant to the Complaint, Plaintiff worked for Defendant within the City of New York.

161. Defendant aided and abetted and/or attempted to aid and abet Nunez's NYCHRL violations against Plaintiff described herein, including by ignoring Plaintiff's repeated complaints of discrimination, refusing or failing to conduct a proper and thorough investigation of Plaintiff's complaints, refusing or failing to take remedial measures in response to Plaintiff's complaints, and acquiescing to Nunez's discriminatory conduct, including her creation of a hostile working environment and/or harassment of Plaintiff based on their creed, religion non-religion, sexual orientation, and/or disability.

162. Defendant participated in Nunez's NYCHRL violations described herein and/or attempted to do so.

163. Defendant assisted and/or attempted to provide assistance to Nunez's discrimination.

164. Defendant knew or should have known that ignoring Plaintiff's complaint concerning Nunez and/or its acquiescence to Nunez's discrimination would aid and abet NYCHRL violations by Nunez.

165. Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

166. Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

167. Plaintiff has suffered emotional distress damages as a result of Defendant's conduct.

168. Defendant's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

169. As a result of Defendant's conduct, Plaintiff is entitled to recovery of compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, and costs pursuant to NYC Admin. Code § 8-502(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

(a) Issuance of a declaratory judgment that the acts complained of herein are in violation of the NYCHRL;

(b) An injunction permanently restraining these violations of the NYCHRL;

(c) Damages related to Plaintiff's emotional suffering and distress caused by Defendant's actions;

(d) Punitive damages;

(e) Prejudgment interest;

(f) An award of reasonable attorneys' fees, expert fees, and costs; and

(g) All such other and further relief as the Court deems necessary and proper

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: April 13, 2021
      Whitestone, New York

Respectfully submitted,

By: /s/ Cyrus E. Dugger
     Cyrus E. Dugger

**THE DUGGER LAW FIRM, PLLC**
Cyrus E. Dugger
28-07 Jackson Ave., 5th Fl.
Long Island City, New York 11101
Tel: (646) 560-3208
Fax: (646) 390-4524
cd@theduggerlawfirm.com

*Attorneys for Plaintiff Rafael Sanchez*