**THE DUGGER LAW FIRM, PLLC**
**Cyrus E. Dugger**
**28-07 Jackson Ave., 5th Fl.**
**Long Island City, NY 11101**
**Tel: (646) 560-3208**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| RAFAEL SANCHEZ, individually, and on behalf of all others similarly situated, | : : : | **Case No. 1:21 Civ. 03229** |
| Plaintiff, | : : | **AMENDED COLLECTIVE ACTION** |
| v. | : : | **COMPLAINT** |
| L'OREAL USA, INC., | : : | **Demand for Trial by Jury** |
| Defendant. | : : : | |

1.      Plaintiff Rafael Sanchez ("Plaintiff"), by and through his attorneys, The Dugger Law Firm, PLLC, makes the following allegations against L'Oreal USA, Inc. ("L'Oreal" or "Defendant"), individually, with respect to his claims under the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"), the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"), and the New York Labor Law ("NYLL"), and individually in his individual capacity, as well as on behalf of all those similarly situated, with respect to his claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA").

## PRELIMINARY STATEMENT

2.      Defendant subjected Plaintiff to: (1) sexual orientation-based harassment and a sexual orientation-based hostile work environment; (2) atheism-based harassment and an atheism-based hostile work environment; (3) HIV disability-based harassment and an HIV disability-based hostile work environment; (4) sexual orientation plus HIV-disability harassment

and sexual orientation plus HIV-disability-based hostile work environment; (5) retaliation; and/or (6) aiding and abetting and attempted aiding and abetting of discrimination, all in violation of the NYCHRL.

3.      Defendant additionally subjected Plaintiff to aiding and abetting and attempted aiding and abetting in violation of the NYSHRL.

4.      Defendant additionally violated the FLSA by failing to pay required overtime premiums to Plaintiff for all hours worked over forty hours in every workweek worked, and upon information and belief, and failing to do so for other similarly situated former makeup artists and/or skincare consultants of Defendant who worked within New York City.

5.      Defendant additionally violated the NYLL by failing to pay required overtime premiums to Plaintiff and failing to provide accurate wage statements to Plaintiff as required by NYLL § 195(3).

6.      Plaintiff seeks to recover, individually with respect to the NYLL, and individually and on behalf of all similarly situated former makeup artists and/or skincare consultants who worked for Defendant within New York City, unpaid overtime compensation, associated liquidated damages, and interest, pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq*.

## JURISDICTION AND VENUE

7.      This Court has diversity jurisdiction over Plaintiff's claims under N.Y.C. Admin. Code §§ 8-101 *et seq*. and New York Executive Law pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiff is a citizen of a different state than Defendant and the amount in controversy exceed $75,000 exclusive of interest and costs.

8.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and the FLSA, 29 U.S.C. § 216(b).

9.     This Court has jurisdiction over Plaintiff's state law NYLL claims pursuant to 28 U.S.C. § 1367.

10.    Defendant is subject to personal jurisdiction in New York.

11.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1)-(2), because the Defendant is a resident of New York, and because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district and Defendant operates its businesses within this judicial district.

## THE PARTIES

**Plaintiff Rafael Sanchez**

12.    Plaintiff is an adult individual who is a resident of Union City, New Jersey.

13.    Plaintiff is a citizen of New Jersey.

14.    Plaintiff was an employee of Defendant within the meaning of the NYCHRL and NYSHRL, from approximately December 2017 to approximately December 2018.

15.    Plaintiff is and was a person within the meaning of the NYCHRL and NYSHRL at all times relevant to the Complaint.

16.    Plaintiff was an employee within the meaning of the FLSA and NYLL at all times relevant to the Complaint.

**Defendant L'Oreal USA, Inc.**

17.    Defendant L'Oreal USA, Inc. is a Delaware corporation with a principal place of business in New York, New York.

18.     At all times relevant to the Complaint, Defendant transacted business within New York, New York.

19.     At all times relevant to the Complaint, Defendant was an employer and/or joint employer of Plaintiff within the meaning of the NYCHRL and NYSHRL.

20.     At all times relevant to the Complaint, Defendant was an employer and/or joint employer of Plaintiff within the meaning of the FLSA and NYLL.

21.     At all times relevant to the Complaint, Defendant was a person within the meaning of the NYCHRL and NYSHRL.

22.     Upon information and belief, at all times relevant to the Complaint, Defendant was an enterprise whose gross volume of sales made or business done has been more than $500,000, pursuant to and/or within the meaning of 29 U.S.C. § 203.

## FACTUAL ALLEGATIONS

23.     Defendant hired Plaintiff as a makeup artist and skincare consultant during approximately December 2017, through staffing company Randstad Professionals US, LLC ("Randstad").

24.     Randstad's primary interaction with Plaintiff after he began his work for L'Oreal was the administration of payroll payments to him.

25.     L'Oreal initially interviewed Plaintiff, during which interview it instructed that he would be required to dress in an all black suit at all times: a black blazer, tucked in black shirt black slacks, black belt, black socks and black dress shoes.

26.     L'Oreal controlled the manner and means of Plaintiff's, and upon information and belief, similarly situated makeup artists and/or skincare consultants', sales work.

27.     L'Oreal had discretion over when and how Plaintiff, and upon information and belief, how similarly situated makeup artists and/or skincare consultants worked.

28.     L'Oreal had the power to set, and in fact set, Plaintiff's hours of work for the company.

29.     Upon information and belief, L'Oreal had the power to set, and in fact set, similarly situated makeup artists and/or skincare consultants' hours of work for the company.

30.     Plaintiff's work was part of the regular business of L'Oreal of selling beauty products to its customers and potential customers.

31.     L'Oreal set the hours and location of work for Plaintiff's, and upon information and belief, similarly situated makeup artists and/or skincare consultants', weekly assignments.

32.     L'Oreal initially assigned Plaintiff to work at the Bloomingdale's store in New York City on Lexington Ave. at 59th street.

33.     Plaintiff serviced clients while demonstrating the benefits of L'Oreal's YSL beauty products to customers in affiliated stores.

34.     Plaintiff was paid on an hourly basis for his work for L'Oreal.

35.     Plaintiff, and upon information and belief, similarly situated makeup artists and/or skincare consultants, depended on L'Oreal for the opportunity to provide services.

36.     Upon information and belief, L'Oreal paid Plaintiff's wages through Randstad's payroll system.

37.     Approximately three weeks after L'Oreal interviewed Plaintiff, it first assigned him to work on or about December 15-16, 2017.

38.     During the first few weeks after starting to work for L'Oreal, Plaintiff asked a co-worker about being paid overtime for working over forty hours in a week.  The co-worker told

Plaintiff that Defendant did not pay overtime and that he would receive the same rate however many hours he worked each week.

39.     Plaintiff worked for approximately two weeks before he was informed to contact a payroll company named Randstad to get paid.

40.     In order to be signed up for payment via Randstad, Plaintiff's L'Oreal Executive Business Manager Alberto Caballero ("Caballero") had to onboard him and communicate his information to Randstad to set up his payroll payments.

41.     Plaintiff could not be paid without L'Oreal's Executive Account Manager Samantha Bergman ("Bergman") approving his hours and submitting them to be paid via Randstad.  As a result, on several instances when Bergman was on vacation Plaintiff, and upon information and belief, other similarly situated employees, were paid late.

42.     Upon information and belief, similarly situated makeup artists and/or skincare consultants, could not be paid without L'Oreal's Executive Account Manager Bergman approving their hours and submitting them to be paid via Randstad.

43.     L'Oreal directed all aspects of Plaintiff's work, including instructions on, *inter alia*, what to wear, when he could break for lunch, where he should stand at the counter, or whether he should stand in a different location on a particular day.

44.     Upon information and belief, Plaintiff never physically met with any employee of Randstad.

45.     Plaintiff never received instructions regarding how to carry out his duties from Randstad.

46.     Plaintiff initially worked for two weeks before he was first told that he had to signup with Randstad to receive L'Oreal's payroll payments.

47.     During approximately the week of April 16, 2018, L'Oreal temporarily assigned Plaintiff to assist with a pop-up store at the flagship Lord & Taylor store in Manhattan located at 424 Fifth Avenue.

48.     During this week-long assignment at Lord & Taylor, Plaintiff's supervisor was Viviana Nunez ("Nunez") -- the Business Manager for L'Oreal for this store.

49.     Nunez was an employee, joint employee, and/or agent of L'Oreal.

50.     In the alternative, Nunez was a non-agent independent contractor of L'Oreal.

51.     Nunez reported directly to L'Oreal's Executive Account Manager Samantha Bergman ("Bergman").

52.     When Plaintiff began working at the pop-up store, several of the employees warned him that Nunez was "very religious" and was "going to try to convert" him to Christianity.

53.     As forecasted, Nunez's Christian proselytizing began early on during Plaintiff's pop-up store assignment. Shortly after Plaintiff began working at this store, Nunez began a campaign of anti-gay harassment and Christian proselytizing directed at Plaintiff.

54.     During the first few days of the pop-up store opening, Nunez asked Plaintiff: "Do you believe in God?"

55.     When Plaintiff responded that he was an atheist, Nunez began proselytizing Christianity to him.

56.     Nunez repeatedly cited passages from the bible to Plaintiff, demanded that he start going to church with her, and instructed him that he needed to "repent for his sins" so that he could one day be "accepted into the kingdom of heaven."

57.     When Nunez asked Plaintiff if he read the Bible he responded: "No I have never read the Bible. I don't believe in it."

58.     Plaintiff returned to work for L'Oreal at a Bloomingdale's store full-time after this one-week assignment under Nunez at the pop-up store location.

59.     Shortly thereafter, during May 2018, L'Oreal directed Plaintiff to work for L'Oreal at the same previous flagship Lord & Taylor store under Nunez for several workdays each week.

60.     During each of these days, Nunez continued to proselytize to Plaintiff about Christianity, including additional comments about "the kingdom of heaven," the bible, and God.

61.     On one of these days, during approximately early to mid-May 2018, Nunez disclosed to Plaintiff that her kidney was failing, that she did several hours of dialysis each night, and that she was counting on God to provide her with a kidney transplant.

62.     In a moment of empathy, Plaintiff in turn disclosed that he was HIV-positive and suffered from severe anxiety and depression.

63.     Nunez responded that having HIV meant that Plaintiff had been "a little whore" and "promiscuous" as a gay man.

64.     She then asked Plaintiff if he could "handle" his job while being HIV-positive.

65.     During June 2018, L'Oreal again assigned Plaintiff to work at the Lord & Taylor flagship store at 424 Fifth Avenue one to two days a week under Nunez's supervision.

66.     During June 2018, Nunez told Plaintiff that she needed to speak with him about an "important matter" and asked him to join her for coffee at a Panera Bread.

67.     After they sat down at Panera Bread, Nunez began proselytizing to Plaintiff by: (1) citing passages from the Bible; (2) repeatedly demanding that he start going to church with her; and (3) instructing him that he "repent for his sins."

68.     When Plaintiff reminded Nunez that he was an atheist who did not believe in God she was undeterred.

69.     Instead, Nunez continued her Christian proselytization to Plaintiff and reprimanded him for not listening closely enough to her about "repenting for his sins."

70.     Nunez's statements to Plaintiff included, without limitation, that: (1) she had invited him to coffee to get him to join her church and/or faith; (2) she was "worried for his soul"; and (3) he would not get into the kingdom of heaven unless he "did what she said."

71.     Nunez also repeatedly pressed Plaintiff for a specific date on which he would go to her church with her.

72.     In response, Plaintiff asked Nunez the position of her church on homosexuals, including whether her church was "inclusive."

73.     Nunez answered: "I must be honest with you.  Your homosexuality *is a virus*. You know *your homosexuality is a virus*" and that they would "have to work around it" by maybe *"having [him] marry a woman*."

74.     This reference to Plaintiff's homosexuality as a "virus," was particularly emotionally damaging given Plaintiff's long history being subjected to this same anti-gay rhetoric during the eighties AIDS epidemic.

75.     It was similarly particularly damaging because of the related conflation of homosexuality and HIV.

76.    The cruelty of these statements was compounded by Nunez's knowledge that Plaintiff was HIV-positive.

77.    These statements were also particularly emotionally damaging to Plaintiff because, during Plaintiff's youth and young adulthood, he experienced intense, and on occasions violent and life-threatening, anti-gay harassment and discrimination as a gay male in Venezuela -- including being a repeated target for police and vigilante anti-gay violence against homosexuals.

78.    For example, during approximately 1988, Plaintiff was chased by an anti-gay mob shooting at him in a high-speed car chase down a major commercial avenue in Caracas -- as police looked on without intervening.

79.    In response to Nunez's discriminatory harassment, Plaintiff opposed Nunez's proselytizing and anti-gay statements.  Plaintiff told Nunez that he had a problem with the Catholic church and Christianity generally because of their stances on homosexuality.

80.    When Plaintiff returned to the Lord & Taylor flagship store after this meeting with Nunez at Panera Bread, he told his co-worker, who was also Nunez's subordinate, what Nunez had said to him.

81.    Specifically, Plaintiff told his co-worker that Nunez had said his "homosexuality was a virus," like he had "a disease that need[ed] to be cured or eradicated."

82.    His co-worker responded: "oh that's [Nunez] she [proselytizes] everyone."

83.    One or two weeks later, Nunez approached Plaintiff and said, in sum and substance, in Spanish:

          Nunez:          "Are you active?"

          Plaintiff:        "What do you mean active?"

| | | |
|---|---|---|
| Nunez: | "Do you have a boyfriend? |
| Plaintiff: | "Not at the moment I don't.  Why?" |
| Nunez: | "Ah, so you are not active!" |
| Plaintiff: | . . . |
| Nunez: | "Why don't *you abandon your faggot ways* and join me in the kingdom of heaven? |
| Plaintiff: | "I can't do that.  I could never do that." |

(emphasis added).

84.     Over the course of the following weeks, Nunez continued to proselytize to Plaintiff several times each week, inclusive of quoting passages from the bible to him and referring to "Jesus Christ" and needing to go "to the kingdom of heaven."

85.     Nunez subsequently took a medical leave from work on or about July 4, 2018.

86.     Nunez returned to work from her leave during approximately the first week of September 2018.

87.     Within a month, and continuing to December 2018, Nunez again initiated a campaign of anti-gay harassment of Plaintiff and Christianity proselytizing to Plaintiff.

88.     Nunez repeatedly: (1) asked Plaintiff "if you are attracted to/like men, are you a woman inside"; (2) told him that "homosexuality was a virus"; and (3) asserted he could "only be cured if [he] stopped being gay and accepted God," among many other anti-gay and harassing statements.

89.     All told, Nunez made more than twenty anti-gay statements to Plaintiff, inclusive of repeatedly referring to him as a "fag," "faggot," or its Spanish equivalent "marico" or "maricon," calling his homosexuality a "virus," telling him to "abandon his faggot ways and join

her in the kingdom of heaven," and telling him to "abandon his faggot ways" and/or "not be such a faggot."

90.     Nunez also repeatedly posed the following harassing question to Plaintiff: "[I]f you are attracted/like men, are you a woman inside?"

91.     Beginning in October 2018, Plaintiff made three or four calls to L'Oreal about Nunez's harassment.

92.     Plaintiff repeatedly detailed the harassment and asked to be connected with L'Oreal human resources.

93.     At least one dispatcher confirmed that they would escalate his complaint to human resources.

94.     Plaintiff never received a return phone call in response to any of these protected complaints of discrimination.

95.     Moreover, upon information and belief, Defendant was already well-aware of Nunez's anti-gay harassment and Christian proselytizing at work prior to Plaintiff's complaints.

96.     Upon information and belief, throughout her fifteen-year tenure with Defendant, Nunez had repeatedly proselytized to and/or attempted to convert other subordinate store employees to join her Christian faith.

97.     On or about December 2, 2018, Nunez falsely accused Plaintiff of "cheating" on his time sheets.

98.     Later the same day, Nunez sent Plaintiff more proselytizing text messages about Christianity.

99.     One day later, Nunez texted Plaintiff that she had cancelled all of his shifts at Lord & Taylor -- effectively terminating his employment and/or constructively discharging him.

100.     Throughout Plaintiff's employment with Defendant, it failed to pay him required time and a half overtime premiums for all hours worked over forty hours in a workweek.

101.     Upon information and belief, throughout Plaintiff's employment, and particularly during holiday season weeks and/or weeks during which he was asked to work late to close, Defendant frequently failed to pay him overtime premium compensation for all hours worked over forty hours in a workweek.

102.     Plaintiff was also occasionally asked to work through his lunch break.

103.     For example, upon information and belief, during at least one workweek during each of the following months, Defendant failed to pay Plaintiff all overtime premium compensation for all hours he actually worked: (1) February 2018; (3) March 2018; (4) June 2018; (5) August 2018; (6) September 2018; (7) October 2018; and (8) November 2018, totaling, upon information and belief, at least fifty hours of unpaid overtime compensation during at least 2018.

## COLLECTIVE ACTION ALLEGATIONS

104.     Plaintiff brings the eighth Cause of Action on behalf of himself, in his individual capacity, as well as on behalf of the following collective: an opt-in collective pursuant to 29 U.S.C. § 216(b) of all persons who worked for Defendant (or its predecessor(s)) within New York City, as makeup artists and/or skincare consultants, at any time between three years prior to opting into the instant action and the present (the "FLSA Collective").

105.     Plaintiff and the FLSA Collective claim that Defendant (and/or its predecessor) had a policy and/or practice of failing to pay all overtime due for all hours worked over forty hours in each workweek, resulting in liability for unpaid overtime compensation pursuant to the FLSA.

106.     Plaintiff and the FLSA Collective further allege that Defendant had and/or has a policy or practice of failing to pay Plaintiff and the FLSA Collective all of their overtime wages owed.

107.     The FLSA Collective consists of many similarly situated individuals to whom Defendant has not paid the federal required overtime wage and who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit.

108.     Plaintiff and the FLSA Collective were all subject to Defendant's policies, practices, practices, customs, and/or procedures concerning their compensation

109.     Defendant had a policy, practice, custom, and/or procedure of failing to pay Plaintiff and the FLSA Collective all overtime wages owed as required by the FLSA.

110.     These similarly situated collective members are known to Defendant, are readily identifiable, and can be located through Defendant's records.

111.     Notice should be sent to the members of the FLSA Collective pursuant to 29 U.S.C § 216(b).

## **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**
**New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)**
**Sexual Orientation Harassment and Sexual Orientation-Based Hostile Work Environment**
**(On Behalf of Plaintiff)**

112.     Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

113.     At all times relevant to the Complaint, Defendant was an employer and/or joint employer within the meaning of the NYCHRL.

114.   At all times relevant to the Complaint, Defendant had more than four employees and/or independents contractors in its employ, at all times beginning twelve months before his employment with Defendant, and continuing through the termination of his employment.

115.   At all times relevant to the Complaint, Plaintiff was an employee and/or person within the meaning of the NYCHRL.

116.   At all times relevant to the Complaint, Plaintiff worked for Defendant within the City of New York.

117.   At all times relevant to the Complaint, Plaintiff was a gay male.

118.   At all times relevant to the Complaint, Defendant and/or Nunez knew that Plaintiff was a gay male.

119.   Defendant and/or Nunez discriminated against Plaintiff by treating him less well because of, or in part because of, his sexual orientation, including by subjecting him to sexual orientation harassment and/or a sexual orientation-based hostile work environment.

120.   Defendant is liable for Nunez's discrimination pursuant to N.Y.C. Admin. Code § 8-107(13)(b) and/or N.Y.C. Admin. Code § 8-107(13)(c).

121.   Nunez exercised managerial or supervisory responsibility for Defendant and/or exercised managerial or supervisory responsibility over Plaintiff.

122.   Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

123.   Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

124.    Nunez was hired by and/or worked for Defendant to carry out work in furtherance of Defendant's business enterprise.

125.    Nunez's discriminatory conduct was committed in the course of her work for and/or employment with Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced to such conduct.

126.    Nunez was an employee and/or agent of Defendant. In the alternative, Nunez was a non-agent independent contractor of Defendant.

127.    Defendant's and/or Nunez's creation of a hostile work environment was a continuing violation.

128.    Plaintiff has suffered emotional distress as a result of Defendant's and/or Nunez's conduct.

129.    Defendant's and/or Nunez's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

130.    As a result of Defendant's and/or Nunez's conduct, Plaintiff is entitled to recovery of compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, and costs pursuant to NYC Admin. Code § 8-502(a).

**SECOND CAUSE OF ACTION**
**New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)**
**Creed Harassment and Creed-Based Hostile Work Environment**
**(On Behalf of Plaintiff)**

131.    Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

132.    At all times relevant to the Complaint, Defendant was an employer and/or joint employer within the meaning of the NYCHRL.

133.     At all times relevant to the Complaint, Defendant had more than four employees and/or independent contractors in its employ at all times beginning twelve months before his employment with Defendant and continuing through the termination of his employment.

134.     At all times relevant to the Complaint, Plaintiff was an employee and/or person within the meaning of the NYCHRL.

135.     At all times relevant to the Complaint, Plaintiff worked for Defendant within the City of New York.

136.     At all times relevant to the Complaint, Plaintiff was an atheist and/or non-religious.

137.     At all times relevant to the Complaint, Defendant and/or Nunez knew that Plaintiff was an Atheist and/or non-religious.

138.     Defendant and/or Nunez discriminated against Plaintiff by treating him less well because of, or in part because of, his Atheism and/or non-religious creed and/or identification, including by subjecting him to creed and/or religious harassment and/or a creed-based and/or religion-based hostile work environment.

139.     Defendant is liable for Nunez's discrimination pursuant to N.Y.C. Admin. Code § 8-107(13)(b) and/or N.Y.C. Admin. Code § 8-107(13)(c).

140.     Nunez exercised managerial or supervisory responsibility for Defendant and/or exercised managerial or supervisory responsibility over Plaintiff.

141.     Nunez was hired by and/or worked for Defendant to carry out work in furtherance of Defendant's business enterprise.

142.     Nunez's discriminatory conduct was committed in the course of her employment with and/or work for Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced to such conduct.

143.     Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

144.     Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

145.     Defendant's and/or Nunez's creation of a hostile work environment was a continuing violation.

146.     Plaintiff has suffered emotional distress damages as a result of Defendant's and/or Nunez's conduct.

147.     Defendant's and/or Nunez's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

148.     As a result of Defendant's and/or Nunez's conduct, Plaintiff is entitled to recovery of compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, and costs pursuant to NYC Admin. Code § 8-502(a).

## THIRD CAUSE OF ACTION
### New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)
### Sexual Orientation Plus HIV Disability Status Harassment, Sexual Orientation Plus HIV Disability Status-Based Hostile Work Environment
### (On Behalf of Plaintiff)

149.     Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

150.    At all times relevant to the Complaint, Defendant was an employer and/or joint employer within the meaning of the NYCHRL.

151.    At all times relevant to the Complaint, Defendant had more than four employees and/or independents contractors in its employ at all times beginning twelve months before his employment with Defendant and continuing through the termination of his employment.

152.    At all times relevant to the Complaint, Plaintiff was an employee and/or person within the meaning of the NYCHRL.

153.    At all times relevant to the Complaint, Plaintiff was disabled within the meaning of the NYCHRL because he was HIV-positive.

154.    At all times relevant to the Complaint, Defendant and/or Nunez knew that Plaintiff was HIV-positive.

155.    At all times relevant to the Complaint, Plaintiff was a gay male.

156.    At all times relevant to the Complaint, Defendant and/or Nunez knew that Plaintiff was a gay male.

157.    At all times relevant to the Complaint, Plaintiff worked for Defendant within the City of New York.

158.    Defendant and/or Nunez discriminated against Plaintiff by subjecting him to harassment and/or a hostile work environment because of, or in part because of, a combination of his sexual orientation and his HIV-positive disability status.

159.    Nunez exercised managerial or supervisory responsibility for Defendant and/or exercised managerial or supervisory responsibility over Plaintiff.

160.    Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

161.    Nunez was hired by and/or worked for Defendant to carry out work in furtherance of Defendant's business enterprise.

162.    Nunez's discriminatory conduct was committed in the course of her work for and/or employment with Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced to such conduct.

163.    Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

164.    Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

165.    Defendant's and/or Nunez's creation of a hostile work environment was a continuing violation.

166.    Plaintiff has suffered emotional distress damages as a result of Defendant's and/or Nunez's conduct.

167.    Defendant is liable for Nunez's discrimination pursuant to N.Y.C. Admin. Code § 8-107(13)(b) and/or Admin. Code § 8-107(13)(c).

168.    Defendant's and/or Nunez's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

169.    As a result of Defendant's and/or Nunez's conduct, Plaintiff is entitled to recovery of compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, and costs, and other compensation pursuant to NYC Admin. Code § 8-502(a).

**FOURTH CAUSE OF ACTION**
**New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)**
**Disability Harassment, Disability-Based Hostile Work Environment, and Disability**
**Stereotyping Discrimination**
**(On Behalf of Plaintiff)**

170.    Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

171.    At all times relevant to the Complaint, Defendant was an employer and/or joint employer within the meaning of the NYCHRL.

172.    At all times relevant to the Complaint, Defendant had more than four employees and/or independents contractors in its employ at all times beginning twelve months before his employment with Defendant and continuing through the termination of his employment.

173.    At all times relevant to the Complaint, Plaintiff was an employee and/or person within the meaning of the NYCHRL.

174.    At all times relevant to the Complaint, Plaintiff worked for Defendant within the City of New York.

175.    At all times relevant to the Complaint, Plaintiff was disabled within the meaning of the NYCHRL because he was HIV-positive.

176.    At all times relevant to the Complaint, Defendant and/or Nunez knew that Plaintiff was HIV-positive.

177.    Defendant and/or Nunez discriminated against Plaintiff by subjecting him to disability harassment and/or a disability-based hostile work environment because of, or in part because of, his HIV-positive status.

178.    Defendant's and/or Nunez's disability discrimination and discriminatory statements included stereotyping discrimination concerning HIV-positive persons, upon information and belief, based on the generalized sense by Nunez that persons, like Plaintiff, who were HIV-positive, could not "handle" working and/or could not "handle" working with a reasonable accommodation of their disability.

179.    Defendant's and/or Nunez's creation of a hostile work environment was a continuing violation.

180.    Plaintiff has suffered emotional distress and additional damages as a result of Defendant's and/or Nunez's conduct.

181.    Defendant is liable for Nunez's discrimination pursuant to N.Y.C. Admin. Code § 8-107(13)(b) and/or N.Y.C. Admin. Code § 8-107(13)(c).

182.    Nunez exercised managerial or supervisory responsibility for Defendant and/or exercised managerial or supervisory responsibility over Plaintiff.

183.    Nunez was hired by and/or worked for Defendant to carry out work in furtherance of Defendant's business enterprise.

184.    Nunez's discriminatory conduct was committed in the course of her work for and/or employment with Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced to such conduct.

185.    Nunez's discriminatory conduct was committed in the course of her work for and/or employment for Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced in such conduct.

186.    Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

187.    Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

188.    Defendant's and/or Nunez's creation of a hostile work environment was a continuing violation.

189.    Defendant's and/or Nunez's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

190.    As a result of Defendant's and/or Nunez's conduct, Plaintiff is entitled to recovery of compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, and costs pursuant to NYC Admin. Code § 8-502(a).

## FIFTH CAUSE OF ACTION
### New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(6)
### Aiding and Abetting and Attempted Aiding and Abetting
### (On Behalf of Plaintiff)

191.    Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

192.    At all times relevant to the Complaint, Defendant was a person and/or employer within the meaning of the NYCHRL.

193.    At all times relevant to the Complaint, Plaintiff was an employee and/or person within the meaning of the NYCHRL.

194.    At all times relevant to the Complaint, Plaintiff worked for Defendant within the City of New York.

195.    Defendant aided and abetted and/or attempted to aid and abet Nunez's NYCHRL violations and/or acts forbidden by the NYCHRL against Plaintiff, described herein, including but not limited to, by ignoring Plaintiff's repeated complaints of discrimination, refusing or failing to conduct a proper and thorough investigation of Plaintiff's complaints, refusing or failing to take remedial measures in response to Plaintiff's complaints, and acquiescing to Nunez's discriminatory conduct including, but not limited to, her creation of a hostile working environment and/or harassment of Plaintiff based on creed, religion, non-religion, sexual orientation, and/or disability.

196.    Defendant participated in Nunez's NYCHRL violations described herein and/or attempted to do so.

197.    Defendant assisted and/or attempted to provide assistance to Nunez's violations of the NYCHRL and/or of Nunez's acts forbidden by the NYCHRL.

198.    Defendant knew or should have known that ignoring Plaintiff's complaint concerning Nunez and/or its acquiescence to Nunez's discrimination would aid and abet NYCHRL violations by Nunez.

199.    Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

200.    Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

201.    Nunez's discriminatory statements, including, but not limited to, the repeated use of the gay slurs of fag or faggot to refer to Plaintiff, were facial and/or obvious violations of the NYCHRL.

202.    At all times relevant, Nunez was an employee of Defendant and/or joint employee of Defendant.

203.    Plaintiff has suffered emotional distress damages as a result of Defendant's conduct.

204.    Defendant's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

205.    As a result of Defendant's conduct, Plaintiff is entitled to recovery of compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, and costs pursuant to NYC Admin. Code § 8-502(a).

**SIXTH CAUSE OF ACTION**
**New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(7)**
**Retaliation**
**(On Behalf of Plaintiff)**

206.    Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

207.    Upon information and belief, Defendant took adverse actions against Plaintiff because, or at least in part because, Plaintiff engaged in the protected activity of complaining about Nunez's discrimination, including but not limited to, by falsely accusing Plaintiff of

"cheating" on his time sheets, cancelling all of his shifts, and terminating and/or constructively discharging him.

208.    There is temporal proximity of approximately two months or less between Plaintiff's protected complaints made during October and Nunez's adverse actions of falsely accusing Plaintiff of cheating on his time sheets and cancelling all of his shifts, sufficient to support causation.

209.    Plaintiff has suffered emotional distress damages as a result of Defendant's and/or Nunez's conduct.

210.    Defendant is liable for Nunez's retaliation pursuant to N.Y.C. Admin. Code § 8-107(13)(a) and/or N.Y.C. Admin. Code § 8-107(13)(c).

211.    Nunez was hired by and/or worked for Defendant to carry out work in furtherance of Defendant's business enterprise.

212.    Nunez's discriminatory conduct was committed in the course of her work for and/or employment with Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced to such conduct.

213.    Nunez's discriminatory conduct was committed in the course of her work for and/or employment for Defendant and, upon information and belief, Defendant had actual knowledge of and acquiesced in such conduct.

214.    Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

215.    Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

216.    Defendant's and/or Nunez's conduct constituted willful wanton negligence, recklessness, and/or conscious disregard of the NYCHRL rights of others, or conduct so reckless as to amount to such disregard.

217.    As a result of Defendant's and/or Nunez's conduct, Plaintiff is entitled to recovery of compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, expert fees, and costs pursuant to NYC Admin. Code § 8-502(a).

**SEVENTH CAUSE OF ACTION**
**New York State Human Rights Law § 296(6)**
**Aiding and Abetting and Attempted Aiding and Abetting**
**(On Behalf of Plaintiff)**

218.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

219.    At all times relevant to the Complaint, Plaintiff was a covered employee and/or a person within the meaning of the NYSHRL.

220.    At all times relevant to the Complaint, Defendant was a person within the meaning of the NYSHRL.

221.    At all times relevant, Nunez was an employee, joint employee, agent and/or non-agent independent contractor of Defendant.

222.    Defendant aided and abetted and/or attempted to aid and abet Nunez's violations of the NYSHRL and/or acts forbidden by the NYSHRL.

223.    At all times relevant to the Complaint, Plaintiff worked for Defendant within the State of New York.

224.    Defendant aided and abetted and/or attempted to aid and abet Nunez's NYSHRL violations and/or acts forbidden by the NYSHRL against Plaintiff, described herein, including but not limited to, by ignoring Plaintiff's repeated complaints of discrimination, refusing or

failing to conduct a proper and thorough investigation of Plaintiff's complaints, refusing or failing to take remedial measures in response to Plaintiff's complaints, and acquiescing to Nunez's discriminatory conduct including, but not limited to, her creation of a hostile working environment and/or harassment of Plaintiff based on creed, religion, non-religion, sexual orientation, and/or disability.

225.    Defendant participated in Nunez's NYSHRL violations described herein and/or attempted to do so.

226.    Defendant assisted and/or attempted to provide assistance to Nunez's violations of the NYSHRL and/or of Nunez's acts forbidden by the NYSHRL.

227.    Defendant knew or should have known that ignoring Plaintiff's complaint concerning Nunez and/or its acquiescence to Nunez's discrimination would aid and abet NYSHRL violations by Nunez.

228.    Upon information and belief, Defendant knew of Nunez's discriminatory conduct and acquiesced to such conduct and/or failed to take immediate and appropriate corrective action.

229.    Defendant should have known of Nunez's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

230.    Nunez's discriminatory statements, including, but not limited to, the repeated use of the gay slurs of fag or faggot to refer to Plaintiff, were facial and/or obvious violations of the NYSHRL.

231.    Plaintiff has suffered emotional distress damages as a result of Defendant's and/or Nunez's conduct.

232.    Defendant's and/or Nunez's conduct was intentional and done with malice and/or reckless indifference to the NYSHRL rights of Plaintiff.

233.    As a result of Defendant's conduct, Plaintiff is entitled to recovery of compensatory damages, declaratory relief, injunctive relief, attorney's fees, and costs pursuant to § 297(10).

**EIGHTH CAUSE OF ACTION**
**Fair Labor Standards Act – Failure to Pay Overtime Wages**
**(On Behalf of Plaintiff and the FLSA Collective)**

234.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

235.    At all times relevant to the complaint, Plaintiff, and upon information and belief, the members of the FLSA Collective, were employed and/or jointly employed by Defendant within the meaning of the FLSA.

236.    At all times relevant to the Complaint, Plaintiff, and upon information and belief, the members of the FLSA Collective, were employees within the meaning of the FLSA.

237.    At all times relevant to the complaint, Defendant was an employer or joint employer of Plaintiff and, upon information and belief, the members of the FLSA Collective.

238.    Upon information and belief, at all times relevant to the complaint, Defendant violated the FLSA, including by failing to pay Plaintiff, and upon information and belief the FLSA collective, overtime wages for all hours Defendant suffered and/or permitted them to work above forty hours in a workweek, which failure resulted in overtime wage violations.

239.    At all times relevant to the Complaint, the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, applied to Defendant and protected Plaintiff and upon information and belief  the FLSA Collective.

240. Defendant failed or refused to pay Plaintiff, and upon information and belief, the FLSA Collective, overtime compensation at the rate required by federal law for all weeks worked, which violated the FLSA.

241. At all times relevant to the complaint, Plaintiff and the FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(b) and 206.

242. At all times relevant to the complaint, Defendant was an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(b), (d), 206.

243. At all times relevant to the Complaint, Plaintiff, and upon information and belief, the FLSA Collective, were employees within the meaning of the FLSA, including 29 U.S.C. § 203.

244. Upon information and belief, Defendant has failed to pay Plaintiff all overtime premium compensation to which he was entitled under the FLSA, for all workweeks, within three years prior to his filing his complaint in this action.

245. Upon information and belief, Defendant has failed to pay many members of the FLSA Collective the overtime wages to which they were entitled within three years prior to his filing his complaint in this action.

246. Upon information and belief, Defendant has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff the FLSA Collective and its non-compliance has been willful.

247. Upon information and belief, Defendant was familiar with the requirement to pay its employees additional overtime compensation for every hour worked above forty hours in a

workweek, but willfully failed to pay overtime compensation for all hours worked for Plaintiff and the FLSA Collective, despite this knowledge.

248.    As a result of Defendant's willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 *et seq*.

249.    As a result of the unlawful acts of Defendant, upon information and belief, Plaintiff and the FLSA Collective have been deprived of overtime wage compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages for unpaid overtime wages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216.

**NINTH CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Overtime Wages**
**(On Behalf of Plaintiff)**

250.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

251.    Defendant failed to pay Plaintiff all of the overtime compensations that he was entitled to under the NYLL.

252.    Defendant violated the NYLL, by failing to pay Plaintiff for all hours Defendant suffered and/or permitted him to work, which failure resulted in overtime wage violations for workweeks for which Plaintiff worked more than forty hours in a workweek without receiving additional overtime compensation.

253.    At all times relevant to the Complaint, Plaintiff was an employee within the meaning of NYLL §§ 2, 651 and the supporting New York State Department of Labor Regulations, and Defendant was an employer within the meaning of NYLL §§ 2, 651-52 and the

supporting New York State Department of Labor Regulations.

254.    Plaintiff did not work at his own convenience and/or was not free to engage in other employment. For example, Plaintiff's L'Oreal manager demanded that he come in and work on a day that he had scheduled off and demanded that he not work for any other companies.

255.    Defendant exercised substantial control over Plaintiff with respect to the results produced and/or the means used for him to work.

256.    Defendant failed to pay Plaintiff overtime compensation for all hours worked over forty hours in a workweek as required by the NYLL and the supporting New York State Department of Labor Regulations.

257.    Defendant's bad faith and willful failure to pay Plaintiff overtime compensation for all of the hours worked over forty hours in a workweek, violated NYLL § 650 *et. seq*. and the supporting New York State Department of Labor regulations.

258.    Defendant did not have a good faith basis to believe that its failure to pay overtime compensation was in compliance with the law.

259.    By Defendant's knowing, bad faith, and/or intentional failure to pay Plaintiff overtime compensation Defendant willfully violated the NYLL.

260.    Due to Defendant's violations of the NYLL, Plaintiff is entitled to recover from Defendant his unpaid overtime wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### TENTH CAUSE OF ACTION
**New York Labor Law – Wage Statement**
**(On Behalf of Plaintiff)**

261.    Plaintiff re-alleges and incorporates by reference all allegations in the preceding

paragraphs.

262.   At all times relevant, Defendant was an employer and/or joint employer within the meaning of NYLL §§ 2, 190.

263.   Defendant suffered and/or permitted Plaintiff to work.

264.   Defendant employed Plaintiff within the meaning of NYLL § 2.

265.   At all times relevant to the Complaint, Plaintiff was an employee within the meaning of NYLL §§ 2, 190.

266.   Plaintiff did not work at his own convenience and/or was not free to engage in other employment. For example, Plaintiff's L'Oreal manager demanded that he come in and work on a day that he had scheduled off and demanded that he not work for any other companies.

267.   Defendant exercised substantial control over Plaintiff with respect to the results produced and/or the means used to do his work.

268.   Defendant failed to provide Plaintiff with the notice required by NYLL § 195(3), by failing to provide him with a statement, with every payment of his wages, <u>accurately listing</u> his total number of overtime hours worked, gross wages earned, and net wages earned.

269.   Due to Defendant's violations of NYLL § 195(3), Plaintiff is entitled to recover from Defendant five thousand dollars in statutory damages, in addition to reasonable attorneys' fees, costs, and injunctive relief, and declaratory relief, as provided for by NYLL § 198(1-d).

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff requests the following relief:

(a)   Conditional certification of the FLSA collective and issuance of notice to the collective;

(b)   Issuance of a declaratory judgment that the acts complained of herein are in

violation of the NYCHRL and NYSHRL;

(c)     An injunction permanently restraining these violations of the NYCHRL and NYSHRL;

(d)     Compensatory damages related to Plaintiff's emotional suffering and distress caused by Defendant's actions;

(e)     Punitive damages;

(f)     Prejudgment interest;

(g)     An award of reasonable attorneys' fees, expert fees, and costs; and

(h)     Unpaid overtime compensation;

(i)     Liquidated damages;

(j)     Statutory damages; and

(k)     All such other and further relief as the Court deems necessary and proper

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: July 28, 2021
        Whitestone, New York

Respectfully submitted,

By:  /s/ Cyrus E. Dugger
        Cyrus E. Dugger

**THE DUGGER LAW FIRM, PLLC**
Cyrus E. Dugger
28-07 Jackson Ave., 5th Fl.
Long Island City, New York 11101
Tel: (646) 560-3208
Fax: (646) 390-4524
cd@theduggerlawfirm.com

*Attorneys for Plaintiff Rafael Sanchez*
*and the putative collective*